## MOTORS INSURANCE CORPORATION v. DOOMS.

No. 31684. Jan. 9, 1945.

*154 P. 2d 955.*

Pierce, McClelland, Kneeland & Bailey, of Oklahoma City, for plaintiff in error.

Remington Rogers, of Tulsa, for defendant in error.

DAVISON, J. This cause is presented on appeal from the court of common pleas of Tulsa county wherein Arthur Dooms, as plaintiff, recovered judgment against the Motors Insurance Corporation for $500. The recovery was based upon an automobile insurance policy issued by the defendant company on February 2, 1942. The policy related to one 1941 Pontiac automobile then owned by Dooms.

On August 31, 1942, the automobile was stolen from Dooms and a few days

later was found in Oklahoma City with its five tires and wheels missing.

On October 17, 1942, this action was instituted in the court of common pleas of Tulsa county by Arthur Dooms. He asserted and alleged that the reasonable value of his automobile when stolen was $1,150 and when recovered such value was $400, a diminution in market value of $750.

To this petition the insurance company filed its answer wherein it tendered to the plaintiff the sum of $187.64, the alleged cost of repair and governmental ceiling replacement price of those portions of the car which were missing when the car was found.

The parties stipulated as to the facts and submitted the controversy to the court for its determination. Under the stipulation, if the court held for plaintiff, the amount of his recovery was to be in the sum of $500; and if defendant prevailed, the amount was to be $187.64. Defendant moved for judgment for the plaintiff in accord with its tender and plaintiff moved for judgment in the sum of $500.

The judgment of the trial court was for $500, representing depreciation in the market and usable value of the car.

The policy upon which the suit was brought contained the following provisions with reference to theft:

"THEFT (BROAD FORM): Loss of or damage to the automobile caused by larceny, robbery or pilferage."

It also provided:

"The Company's liability for loss shall not exceed the actual cash value of the insured property at the time of loss nor what it would then cost to repair or replace either the insured property or any part thereof with other of like kind or quality, with proper deduction for depreciation from any cause except when occurring after theft and prior to recovery thereof, and shall in no event exceed the limits of liability stated in the Declarations.

". . . The Company shall have the right to return any stolen property, with compensation for resultant damage thereto, at any time before the loss is paid."

In presenting this case for review the defendant company calls attention to the annotation appearing in 137 A.L.R. 1199, wherein it is stated:

". . . It is familiar law that, as a general rule, what a party is bound by contract to perform, he must perform, or pay damages upon his failure to do so . . . . and the fourth (exception) which is dificult to state in general terms which are not too broad, is where the conditions with reference to which the parties must be deemed to have contracted do not in fact exist, or where, without fault of either party, there has been such a change in conditions that to enforce performance under the changed conditions is in effect to substitute a different contract. This fourth exception has been termed by the English courts, 'the doctrine of commercial frustration'."

Upon authority of the foregoing annotation defendant asserts:

"The limit of liability of the insurance company under the policy herein sued upon is the amount tendered and it is immaterial that the insured is unable to purchase new tires and tubes with the insurance money."

The defendant company also urges that:

"A contract of insurance which requires an insurance company to pay to the insured what it would cost the insured in an open market to replace tires and tubes which were removed from a stolen automobile is frustrated by war and governmental war regulations which destroy the open market and which prevent the insured from legally purchasing tires and tubes at any cost and the insurance company is released from liability thereon, at least as to all amounts in excess of the amount it would cost the insured to have made such purchase legally on the restricted market had he not been so prevented."

The real question in this case is whether an insurance company can,

by tendering the ceiling price of labor and materials necessary to repair an automobile which has been stolen to the owner thereof, who by reason of war regulations is unable to purchase the same, discharge and satisfy its liability under an insurance contract; or must such insurance company in order to discharge its liability under the policy pay the depreciation in the market value of a stolen car after its recovery from a thief.

The court of common pleas adopted the latter view and held for the plaintiff, rendering judgment for him in the sum of $500 for depreciation in the value of the automobile.

In the annotation heretofore mentioned, it is stated at page 1211 that:

". . . where other modes of performance are available, the case does not fall within the exception, but the promisor is excused, if at all, only upon the grounds discussed in II d, infra."

In support of the foregoing statement three cases are cited by the annotator. They are: Cooper v. Neilson & Maxwell, Vict. L.R. 66; Cornelius v. Banque Franco-Serbe, 165 L.T.N.S. (Eng.) 374; Hindley & Co. v. General Fibre Co., 2 K.B. (Eng.) 517.

In the last-cited case a contract was made for the sale of jute to be shipped from Calcutta to Hamburg, Antwerp, Rotterdam, or Bremen, the port of destination to be declared by the purchaser. On September 11, 1939, the buyers declared Bremen as the port of destination. The sellers thereupon declared the contract canceled, whereupon the purchaser declared Antwerp as the port of destination.

War was declared on September 5, 1939, and the purchasers then lost the right to declare either Hamburg or Bremen as the port of destination, but there still remained a way in which the contract could be legally performed. The method of performance was made possible when Antwerp was declared to be the port of destination. Shipment of the jute to Antwerp was possible of performance even though war had been declared.

Other annotations on the question appear in 147 A.L.R. 1273, at 1286; 148 A.L.R. 1382; 149 A.L.R. 1447; 150 A.L.R. 1413; 151 A.L.R. 1452.

Under a policy of insurance the insurance carrier may, when it locates a stolen car, pay the damages thereto, which are usually determined by a comparison of the market value before and after the theft, Mitchell v. Wadsworth, 78 Okla. 125, 188 P. 1078; Wichita Falls & N. W. Ry. Co. v. Gant, 56 Okla. 727, 156 P. 672; or it may return the car to its owner together with compensation for resultant damage.

In this case the insurance company was not able to purchase tires for the automobile, nor could the owner thereof qualify to obtain such tires. It could, however, pay the owner for the damage to his automobile regardless of the war or governmental regulations connected therewith. The judgment of the trial court enforced the latter obligation and ordered payment in the sum of $500, representing the depreciation in market value of the automobile.

We are of the opinion, and hold, that the judgment of the trial court was correct. It is affirmed.

GIBSON, C.J., HURST, V.C.J., and RILEY, BAYLESS, and ARNOLD, JJ., concur.